IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALISA JAN SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:12-cv-487-TFM |
| | ) (WO) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff Alisa Jan Smith ("Smith") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., alleging that she is unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ found that the plaintiff was not under a "disability" as defined in the Social Security Act and denied the plaintiff's claim for benefits. The Appeals Council rejected a subsequent request for review. Consequently, the ALJ's decision became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c), the

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

parties have consented to entry of final judgment by the United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be AFFIRMED.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. THE ISSUES

**A. The Commissioner's Decision**

Smith was 48 years old at the time of the hearing and has a high school equivalency

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

diploma. (R. 38, 40, 42.) Smith has prior work experience as a school bus driver. (R. 43.) Smith alleges that she became disabled on May 26, 2008, from degenerative disc disease, migraine headaches, anxiety, and depression. (R. 39.) After the hearing, the ALJ found that Smith suffers from severe impairments of degenerative disc disease of the cervical spine and migraine headaches. (R. 19.) The ALJ found that Smith is unable to perform her past relevant work, but that she retains the residual functional capacity to perform sedentary work with limitations. (R. 23.) Specifically, the ALJ found:

> [Smith] can lift and carry no more than 10 pounds frequently, that she can stand and/or walk for a total of about 2 hours in an 8-hour workday, that she can sit for a total of about 6 hours in an 8-hour workday, that she can perform no overhead reaching with the right dominant arm, that she cannot be exposed to unprotected heights and dangerous equipment, that she can have no complex or detailed instructions, and that she can have no work requiring static neck/head movement but no more than occasional movement of the head/neck.

(R. 24.)

Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Smith could perform, including work as a bench assembler, surveillance system monitor, and order clerk. (R. 30.) Accordingly, the ALJ concluded that Smith is not disabled. (*Id*.)

**B. The Plaintiff's Claims**

Smith presents the following issues for review:

(1) The Commissioner's decision should be reversed, because the ALJ failed to properly apply the three-part pain standard established by the Eleventh Circuit.

4

> (2) The Commissioner's decision should be reversed, because the ALJ failed to give adequate weight to the opinion of Dr. Boyington, Smith's treating physician, by completely rejecting the portion of medical opinion which was based on symptomatology.
>
> (3) The Commissioner's decision should be reversed, because the ALJ failed to consider Smith's migraine headaches in the residual functional capacity finding.

(Doc. No. 11, Pl. Br. 5.)

## IV. DISCUSSION

### A. The Pain Analysis

Smith contends that her pain is so severe that she cannot work, but, as explained below, the ALJ did not credit this testimony. Thus, Smith asserts that the ALJ failed to apply the proper standard when considering whether her back condition and migraine headaches affect her residual functional capacity to perform work.

"Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from

that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553.  In this circuit, the law is clear.  The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.  *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553.  Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law.  This standard requires that the articulated reasons must be supported by substantial reasons.  If there is no such support then the testimony must be accepted as true.  *Hale*, 831 F.2d at 1012.

At the administrative hearing, Smith testified that she can walk for no more than ten minutes at a time and stand for no longer than fifteen minutes, that she cannot sit or lie down for too long on a bad day, and "can't do nothing, really."  (R. 51.)  She stated that her back pain between her shoulders "is excruciating at times, sending pain to [her] neck, [her] head, [and her] right arm."  (R. 48.)

The ALJ considered Smith's testimony and discussed the medical evidence.  The ALJ acknowledged that Smith experiences "some pain and functional limitations secondary to her degenerative disc disease of the cervical spine and migraine headaches," but found that "it is not credible that she has experienced the level of symptomatology and functional limitation to

the extent she has alleged." (R. 27.)  Specifically, the ALJ found as follows:

> . . .This conclusion is supported by the fact that the treatment records fail to document physical examination findings of a musculoskeletal impairment of such severity as to cause debilitating pain and functional limitations.  The clinical examinations show some loss of range of motion but there is no evidence of muscle weakness, muscle atrophy, or sensory or motor disruption.  It is also noteworthy that the documentation of record does not contain any hospitalizations or emergency room visits for physical conditions, pain, or migraine headaches since the claimant's alleged onset of disability.
>
> The evidentiary record establishes that, despite the claimant's description of her neck, upper back, and right arm pain as "excruciating," the claimant has opted for only conservative treatment consisting of pain medication, muscle relaxants, and trigger point injections and has declined to have cervical fusion.  The record shows that the claimant has not sought additional treatment with an orthopedist since February, 2008, that she has never sought treatment with a pain management specialist during the relevant time period under consideration, and that she has not had regular follow-up treatment of even the trigger point injections since August, 2008.  It should also be noted that the claimant testified that she takes only one hydrocodone a day for her pain, when she needs it, and that, at other times, she only takes one-half a pill.  These are actions which are not indicative of an individual with "excruciating" pain or an individual who is seeking aggressive treatment to alleviate her pain.
>
> The claimant's credibility with respect to the severity of her symptomatology is also undermined by her lack of follow-up treatment with even her primary care physician since her alleged onset date.  The record contains a gap in treatment of one year during the August, 2008, to August, 2009 and a gap of six months during the period of October, 2009, to February, 2010.  It is more than reasonable to expect that the claimant would seek medical treatment on a regular and persistent basis if she, in fact, experienced the pain, discomfort, and other alleged symptomatology in the incapacitating severity, frequency, and duration that she has reported.

(R. 27-28.)

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility

finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber*, 720 F.2d at 1255 (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. Relying on the treatment records, objective evidence, and Smith's own testimony, the ALJ concluded that her allegations regarding her migraine headaches and degenerative disc disease of the cervical spine were not credible to the extent alleged and discounted that testimony. After a careful review of the ALJ's analysis, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination.

The medical records support the ALJ's conclusion that, while Smith's headaches and upper back and neck condition could reasonably be expected to produce pain, her impairments are not so severe as to give rise to disabling pain. On January 14, 2008, Smith went to Dr. Christo W. Koulisis, an orthopedic surgeon, with complaints of neck pain radiating down her right arm. (R. 191.) After reviewing x-rays of Smith's cervical spine, Dr. Koulisis assessed degenerative disc disease with resultant right arm pain. (*Id*.) On January 17, 2008, Smith

underwent an MRI of her spine. (R. 202.) The radiologist found:

> . . . There is a small osteophytic enchroachment into the right neural foramina at C4-5 and a minimal central right-sided disc bulge at C5-6 not significantly encroaching on the thecal space or neural foramina. No other disc or disc osteophyte disease is identified. . . .

(*Id*.) The radiologist's impression was minimal disc or disc osteophyte disease. (*Id*.) On January 23, 2008, Dr. Koulisis noted that Smith "is miserable with right arm pain in a 6 distribution." (R. 190.)

On February 21, 2008, Smith underwent a diagnostic CT cervical discogram. (R. 241.) Dr. Koulisis' post-operative diagnosis was cervical disc disruption with concordant pain production at C5-6. (*Id*.) Upon examining Smith on February 29, 2008, Dr. Koulisis found that "Smith persists with right arm pain" and that she "has a positive Spurling's [and] [s]ensory deficit in a 6 distribution." (R. 189.) Dr. Koulisis discussed "various conservative vs surgical options, all alternatives in light of the natural history and risks of each course of action." (*Id*.)

On April 1, 2008, Smith went to Dr. Roger T. Boyington, a doctor of osteopathy, requesting a refill of medication for her migraine headaches. (R. 225.) Dr. Boyington noted that Smith's headaches are secondary to her menstrual cycle and a cervical disc bulge. (*Id*.) She reported that she did not wish to have surgery and requested trigger point injections. (*Id*.) Dr. Boyington prescribed Relpax for Smith's headaches, Ultram for neckpain, and Flexeril for muscle spasms. (*Id*.) On April 15, 2008, Smith returned to Dr. Boyington complaining of dizzy spells. (R. 221.) Dr. Boyington prescribed medication for an H-pylori infection and administered a B-12 shot. (*Id*.) On April 28, 2008, Dr. Boyington administered trigger point

injections "[with] good relief." (R. 216.)  Smith returned to Dr. Boyington on May 9, 2008, reporting that the "pain medication eased [her] pain until Monday" and that the "shot helped but didn't last but 4 weeks."[4] (R. 212.)  Dr. Boyington administered trigger point injections and refilled her prescriptions for pain medication. (*Id*.)

On May 28, 2008, Smith complained of pain to her upper back and shoulders blades which began Thursday afternoon. (R. 209.)  Dr. Boyington prescribed Naprosyn, ES Tylenol, and Ultram. (*Id*.)  He also provided Smith a work excuse between May 27, 2008 and June 5, 2008. (R. 207.)

On July 18, 2008, Smith underwent injections for a spine disc x-ray at North Okaloosa Medical Center. (R. 240.)  On August 19, 2008, Smith returned to Dr. Boyington with complaints of cervical pain on the right side radiating from her scapula and extending downward into her right arm and hand. (R. 264.)  Smith reported a pain rating of ten on a ten-point scale. (*Id*.)  Dr. Boyington found decreased range of motion of the right arm and prescribed Ultram for her back pain and Relpax for migraine headaches. (Id.)

On November 12, 2008, Dr. Curtis Anderson, a chiropractor, completed a physician's report for the Florida Retirement System. (R. 283.)  The chiropractor diagnosed Smith as suffering from degenerative disc disease at C5-6 and degenerative osteoarthritis. (*Id*.)  He recommended no activities involving her right extremities and no lifting. (*Id*.)

---

[4] The court is unable to discern whether Smith requested an additional B-12 shot or a trigger point injection during her visit to the doctor on May 9, 2008.  She received a B-12 shot three weeks before, and trigger point injections one and a half weeks before, her May 9, 2008 appointment.

On May 5, 2009, Dr. Lawrence Reis, a chiropractor, examined Smith and completed a Florida Retirement System Physician's Report, for the purpose of determining "in-line-of-duty disability." (R. 278.) During the examination, Smith complained of severe pain between her shoulders, pain along the right side of her neck, headaches, and right arm numbness. (R. 280.) Dr. Reis found that Smith suffers from disk protrusion at C4-5 and C5-6 and cervical radiculopathy, that she should not engage in any activities involving upper body stress, and that she has "severe limitation of functional capacity; permanently incapable of any kind of work; totally and permanently disabled from gainful employment."[5] (R. 279.)
On July 3, 2009, Smith returned to Dr. Reis and received chiropractic manipulative treatment and decompression therapy. (R. 288.)

In a progress note dated August 24, 2009, Dr. Boyington notes that, with respect to Smith's migraine headaches, "overall the patient reports that she is doing well." (R. 290.) Dr. Boyington's review of symptoms indicates Smith suffers from neck pain, chronic back pain, tension between her shoulders and upper trapezius, and cervical spine pain with range of motion. (R. 291.) Dr. Boyington diagnosed muscle spasm, hypertension, esophageal reflux, and cervicalgia and prescribed Lorcet. (R. 292.)

On February 2, 2010, Smith went for an initial visit to Dr. Stephen Quaning, complaining of chronic back pain, neck pain, and headaches. (R. 296.) Dr. Quaning assessed chronic neck pain and disability secondary to disc disease and prescribed pain medication. (R.

---

[5] An ALJ may accord less weight to chiropractors and other non-medical doctors than to medical doctors. *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998).

299.) Although the record indicates that Smith suffers from impairments which could reasonably be expected to produce pain, substantial evidence in the record supports the ALJ's finding that her impairments are not so severe as to give rise to disabling pain.

After a careful review of the record, the court concludes that the ALJ's reasons for discrediting Smith's testimony were both clearly articulated and supported by substantial evidence. Relying on the treatment records, objective evidence, and Smith's own testimony, the ALJ concluded that Smith's allegations regarding the extent of her pain were not entirely credible and discounted that testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

### B. Rejection of Treating Physician's Opinion

Smith argues that the ALJ improperly rejected her treating physician's opinion about the severity of her limitations. In essence, the plaintiff argues that if the ALJ accepted Dr. Boyington's assessment about her physical impairments, she would be disabled. On February 4, 2009, Dr. Boyington completed a clinical assessment of pain form, in which he found that pain is present to such an extent as to be distracting to adequate performance of daily activities or work, that physical activity greatly increases pain to such a degree as to cause distraction from tasks or total abandonment of a task, and that the side effects of prescribed medication can be expected to be severe and to limit effectiveness due to distraction, inattention, and drowsiness. (R. 275.) Dr. Boyington also completed a physical capacities evaluation form,

in which he found that Smith can lift no more than five pounds occasionally to one pound frequently, that she can sit no more than five hours and stand no more than three hours during an eight-hour workday, that she can rarely perform pushing and pulling movements, climbing, bending and stooping, reaching, and working around hazardous machinery, and that she is likely to be absent from work more than four days per month. (R. 276.)

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause

may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

After reviewing all the medical records, the ALJ discounted the opinions of Dr. Boyington as set forth in the physical capacities assessment and pain forms because the "opinions are inconsistent with the record as a whole and are not fully substantiated by the evidentiary record." (R. 25.) Specifically, the ALJ found as follows:

> I must discount Dr. Boyington's opinions in the PCE and pain forms because they are not supported by the objective medical evidence of record. Dr. Boyington's treatment records reflect that he saw the claimant on six occasions in 2008, with the last visit of record for that year being that of August 19, 2008. Dr. Boyington's records indicate that he did no see the claimant again until one year later in August, 2009. At the time Dr. Boyington completed the PCE and pain forms in February, 2009, the record reflects that he had no seen or examined the claimant in six months and there is no indication that he examined the claimant on the date he completed the forms. The absence of examination of the claimant on the date he rendered his opinions of her functional capacities

and limitations, particularly in light of the significant gap in medical treatment, raises a question as to the validity of Dr. Boyington's assessment.

Additionally, a review of Dr. Boyington's treatment records reveals no documentation of significant clinical examination findings which correlate to the debilitating physical limitations and level of pain he placed on the claimant in February, 2009. When he examined the claimant in August, 2008, the only objective clinical examination finding noted by Dr. Boyington was decreased range of motion in the right arm. When he examined the claimant in August, 2009, the only findings Dr. Boyington noted were those of muscle tension of the upper trapezius and pain with range of motion in the cervical spine. Likewise, when Dr. Quaning examined the claimant in February 2010, he noted no abnormal clincal findings and he specifically stated there were "no significant neuro deficits noted on exam." Moreover, the objective diagnostic testing has shown degenerative disc disease of the cervical spine with a "disk disruption" at C-5-C6 but no evidence of a disorder of such severity, such as disc herniation, spinal stenosis, or nerve root impingement, as to cause the debilitating functional limitations and pain indicated by Dr. Boyington. Furthermore, I note that the claimant has been treated by Dr. Boyington on a sporadic basis with conservative treatment measures such as pain medications, muscle relaxants, and trigger point injections, that she has not seen an orthopedic surgeon since February, 2008, and that she has never been evaluated or treated by a pain management physician during the relevant period under consideration. In fact, the claimant was offered surgical intervention as a possible treatment measure in February, 2008 and she has declined to undergo the surgery. These actions seem inconsistent for an individual suffering "excruciating" pain.

Finally, the claimant has reported having a wide range of activities of daily living that are inconsistent with an individual who suffers distracting pain as indicated by Dr. Boyington. For example, the claimant reported that she is able to care for her own personal needs without assistance, that she does light housework and laundry, that she prepared simple meals for her family, that she goes shopping on a weekly basis, that she is able to drive an automobile, that she is able to handle money and pay bills, that she attends church on a weekly basis, and that she reads and watches television. The claimant also reported that she traveled from Alabama to Florida while moving to and from there. She indicated that she stayed with her mother, who had been injured in an accident, for a period of time.

(R. 25-26.)

The ALJ's determination is supported by substantial evidence. The extreme limitations identified by Dr. Boyington in the physical capacity evaluation and clinical assessment of pain forms are not supported by his own treatment records. As previously discussed, the medical records indicate that pain medication and trigger point injections alleviated some of Smith's symptoms and that the medication for migraine headaches was effective. (R. 212, 264, 290.) In addition, Smith received trigger point injections on only three occasions. (R. 209, 212, 216.) When Dr. Boyington completed the forms in February 2009, he had not examined Smith in six months. (R. 264, 275-76.) This court therefore concludes that the discounting of Dr. Boyington's opinion that Smith suffers from extreme limitations on the basis that the treating physician's opinion is inconsistent with his own medical records is supported by substantial evidence.

The ALJ's rejection of Dr. Boyington's conclusory opinion is also supported by other evidence in the record. For example, the medical records indicate that Smith has not sought treatment from an orthopedic specialist since February 2008 and has never been evaluated by a pain management specialist. (R. 26, 47, 189.) In February 2010, Dr. Quaning observed no abnormal clinical findings or significant neurological deficits. (R. 299.) During the hearing before the ALJ, Smith testified that she takes either one half or one full tablet of Hydrocodone a day, uses over-the-counter pain patches, and has chosen not to undergo surgery. (R. 50-51.) This court therefore finds that the ALJ's discounting of Dr. Boyington's opinion that Smith

suffers from extreme limitations is supported by substantial evidence.

### C. Migraine Headaches

Smith asserts that the ALJ failed to consider her migraine headaches when determining she has the residual functional capacity to perform sedentary work. Specifically, she argues that the ALJ did not impose any limitations related to her migraine headaches.[6] The court disagrees.

When determining whether Smith has the residual functional capacity to perform work, the ALJ specifically found that "she can have no work requiring static neck/head movement but no more than occasional movement of the neck/head." (R. 24.) The ALJ also included this limitation in his hypothetical question to the vocational expert. The medical records indicate that Smith's migraine headaches are secondary to her cervical spine condition. (R. 225, 299.) Thus, it is clear that the ALJ included this limitation when determining Smith's capacity to perform sedentary work. Consequently, Smith is not entitled to relief with respect to this claim.

### V. CONCLUSION

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and

---

[6] Smith also argues that the ALJ failed to consider that "she has had to go to the emergency room for treatment on multiple occasions." (Doc. No. 12, Pl. Br. 14.) Nothing in the record indicates that Smith has sought treatment in an emergency room or required hospitalization for her headaches during the relevant time period.

17

is due to be affirmed.

    A separate order will be entered.

    DONE this 22nd day of May, 2013.

                                     /s/ Terry F. Moorer
                                     TERRY F. MOORER
                                     UNITED STATES MAGISTRATE JUDGE